UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| JAMES CLINTON ASHBURN, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | 5:24-CV-05078-RAL <br><br><br> OPINION AND ORDER GRANTING GOVERNMENT'S MOTION TO DISMISS AND DENYING PETITIONER'S § 2255 MOTION |

James Clinton Ashburn filed a motion under 28 U.S.C. § 2255 in this case to vacate, set aside or correct his criminal conviction for conspiracy to distribute a controlled substance. Ashburn had pleaded guilty to that offense under a plea agreement where he waived all defenses and any right to appeal non-jurisdictional issues. Ashburn claims that he received ineffective assistance of counsel because his counsel failed to file motions requested by Ashburn, failed to get Ashburn's consent when filing certain motions, and failed to investigate the case. Ashburn also alleges that there was a conflict of interest because the attorneys acted in the Government's best interest rather than his own. Ashburn's plea agreement and sworn testimony during his change of plea hearing undermine his claims. Because Ashburn has demonstrated neither that his counsel's performance was deficient nor that any of the alleged deficiencies prejudiced his proceedings, this Court denies Ashburn's § 2255 motion and grants the Government's motion to dismiss.

## I.   Facts

Ashburn's pro se § 2255 motion attacks his sentence in Case No. 5:20-cr-50127-RAL-2. Doc. 1. Ashburn was a part of a conspiracy to distribute heroin in the District of South Dakota and elsewhere from early 2019 to approximately September 2020. CR Doc. 93 at 1.[1] During the conspiracy, Ashburn obtained distributable quantities of heroin in Colorado, brought the heroin to South Dakota, and distributed heroin in the Rapid City area. Id. at 1–2. Ashburn admitted that it was reasonably foreseeable to him that between one and three kilograms of heroin would be distributed during the conspiracy. Id. at 2.[2]

During the pendency of this case, three different defense attorneys represented Ashburn. Ashburn's first CJA-appointed lawyer was Michael Wheeler. CR Doc. 27. Six months later on September 29, 2021, Ashburn moved for new counsel arguing that Wheeler's workload was too much to pay due attention to his case and that Wheeler had not filed motions Ashburn believed to be necessary, but Magistrate Judge Daneta Wollmann denied that first motion for new counsel. CR Docs. 36, 37. On March 17, 2022, Ashburn moved again for new counsel, which Magistrate Judge Wollmann granted. CR Docs. 55, 56.

Ashburn's second CJA-appointed attorney was Ryan Kolbeck. See CR Doc. 60. A few months later, on July 15, 2022, Ashburn moved again for new counsel arguing that Kolbeck was not sufficiently communicating with him and had not come to meet with him or review discovery as of the time of the motion. CR Doc. 75, 76. Following another ex parte hearing, Magistrate

---

[1] This Court cites to documents from the underlying criminal case as "CR" followed by the CM/ECF docket number.

[2] Ashburn was indicted for a violation of 21 U.S.C. § 841(b)(1)(A), but he was initially arrested on an arrest warrant that incorrectly referenced a violation of 21 U.S.C. § 841(b)(1)(B). Compare CR Doc. 1 with CR Doc. 28. He ultimately pled guilty to a violation of 21 U.S.C. § 841(b)(1)(A), the charge in the Indictment. CR Doc. 92.

Judge Wollmann denied the third motion for new counsel. CR Doc. 78. Shortly thereafter, Ashburn filed a fourth motion for new counsel citing a conflict of interest that existed with Kolbeck because Kolbeck kept calling about private case details on an unsecure line, allegedly had ridiculed him, and had failed to communicate with him. CR Doc. 79. On August 19, 2022, Magistrate Judge Wollmann granted this motion and appointed Paul Andrews to represent Ashburn. CR Doc. 82. Andrews represented Ashburn for the rest of the case, including during his change of plea and sentencing.

The Honorable Jeffrey L. Viken was assigned to Ashburn's case for most of the pre-trial proceedings, including adopting Magistrate Judge Wollmann's Report and Recommendation on Ashburn's guilty plea on May 24, 2023. CR Doc. 99. Ashburn entered into a plea agreement under which he waived all defenses and non-jurisdictional issues. CR Doc. 92 at 7. After Judge Viken retired, Ashburn's case was then transferred to the undersigned, and on September 21, 2023, this Court sentenced Ashburn to 120 months' imprisonment with five years of supervised release. CR Doc. 128. This Court entered judgment on September 25, 2023. Id. Ashburn did not appeal his guilty plea or his sentence to the United States Court of Appeals for the Eighth Circuit, so his sentence became final on October 9, 2023, fourteen days after this Court entered judgment. United States v. Johnson, 457 U.S. 537, 543 n.8 (1982) (citation omitted); see also Clay v. United States, 537 U.S. 522, 525, 527 (2003); see also Doc. 2 at 7.

In his § 2255 motion, Ashburn seeks relief from alleged ineffective assistance of counsel. Doc. 1. Specifically, he argues that his defense counsel, Wheeler, Kolbeck, and Andrews failed to file a variety of motions, including: 1) a motion to hire an investigator, who Ashburn wishes would have calculated the weight and determined the purity of controlled substances; 2) a motion to suppress; 3) a motion for a speedy trial; 4) a request for a bill of particulars; 5) a request for

Brady material; 6) a motion to sever; and 7) motions to compel the disclosure of body camera footage and grand jury minutes. Id. at 4–5; Doc. 2 at 10. In addition, Ashburn alleges that counsel filed motions for continuances without his consent and failed to investigate the arrest warrant, which Ashburn alleges was defective. Doc. 1 at 4–5. Ashburn claims that his three attorneys deceived him by saying that signing consents to the continuances would not affect his speedy trial rights. Doc. 2 at 3. Ashburn also alleges that there was a conflict of interest because the attorneys acted in the Government's best interest rather than his own. Id. Ashburn contends that if not for his counsel's ineffective representation, he would not have entered the plea agreement, and that if the true weight of heroin had been discovered, the results of his sentencing would have been different. Id. at 8, 20. Ashburn waived his attorney-client privilege to enable his three attorneys to file affidavits in response to his motion. Doc. 12.

This Court screened Ashburn's § 2255 motion and ordered the Government to answer or otherwise respond. Doc. 5. Wheeler, Andrews, and Kolbeck filed affidavits. Docs. 20, 21, 22. In his affidavit, Wheeler wrote that he met with Ashburn multiple times and discussed the weights allegedly involved in the conspiracy, filed two motions for continuance on Ashburn's behalf, and did not file motions Ashburn requested that he determined were frivolous. Doc. 21 at 2. Wheeler did not remember discussing with Ashburn a motion to compel body camera footage. Id. at 3. Wheeler denied the existence of any conflict of interest. Id. at 4.

Kolbeck's affidavit explained that his access to discovery was delayed, but when he did receive the discovery, he travelled to see Ashburn with some printed portions of discovery. Doc. 22 at 1. Ashburn was frustrated that Kolbeck, who is a Sioux Falls attorney, could not visit Ashburn, who was held in Rapid City, on a weekly basis. Id. at 2. Kolbeck was in discussions with the U.S. Attorney's Office in July and August 2022 that could have led to resolution of the

case, but Ashburn moved for new counsel. Id. at 1–2. Kolbeck was terminated shortly thereafter. Id. at 2.

Andrews addressed each of the twelve grounds raised by Ashburn in his accompanying brief and explained his reasoning for the various strategic decisions he made while representing Ashburn. Doc. 20. Andrews hired an investigator to assist on Ashburn's case, and Andrews and the investigator met with Ashburn several times. Id. at 1–5. Following the filing of defense counsel's affidavits, the Government responded and moved to dismiss. Docs. 29, 30.

## II.    Discussion

### A. Section 2255 and Exhaustion Requirement

Ashburn seeks relief under 28 U.S.C. § 2255. Section 2255(a) states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Motions under § 2255 are subject to a one-year statute of limitations that runs from the latest of four specified dates:

(1)    the date on which the judgment of conviction becomes final;

(2)    the date on which the impediment to making a motion created by governmental inaction in violation of the Constitution or laws of the United

> States is removed, if the movant was prevented from making a motion by
> such governmental action;
>
> (3)    the date on which the right asserted was initially recognized by the Supreme
> Court, if that right has been newly recognized by the Supreme Court and
> made retroactively applicable to cases on collateral review; or
>
> (4)    the date on which the facts supporting the claim or claims presented could
> have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).  A judgment of conviction is deemed final "where the judgment of conviction

was rendered, the availability of appeal exhausted, and the time for petition for certiorari had

elapsed." Johnson, 457 U.S. at 542 n.8; Clay, 537 U.S. at 527.  The time for filing a direct appeal

expires fourteen days after entry of the district court's judgment.  Lee v. United States, 149 F.4th

981, 984 (8th Cir. 2025) (citing Fed. R. App. P. 4(b)(1)(A)(i)).  Ashburn's one-year statute of

limitations for filing a § 2255 motion began running on October 9, 2023, when his deadline to file

a direct appeal had run, and expired on October 9, 2024.  Clay, 537 U.S. at 525.  Ashburn filed his

motion on October 7, 2024, two days before this deadline, and the Government concedes that the

motion is timely.  See Doc. 1; Doc. 31 at 5.

When considering a § 2255 motion, the court holds an evidentiary hearing "unless the

motion and the files and the records of the case conclusively show that [the prisoner] is entitled to

no relief."  Holder v. United States, 721 F.3d 979, 993 (8th Cir. 2013) (cleaned up and citation

omitted).  "No hearing is required where the claim is inadequate on its face or if the record

affirmatively refutes the factual assertions upon which it is based."  Watson v. United States, 493

F.3d 960, 963 (8th Cir. 2007) (cleaned up and citation omitted).  The Eighth Circuit has stated:

> A § 2255 motion may be dismissed without hearing if (1) movant's allegations,
> accepted as true, would not entitle him to relief, or (2) the allegations cannot be
> accepted as true because they are contradicted by the record, are inherently
> incredible, or are conclusions rather than statements of fact.

Winters v. United States, 716 F.3d 1098, 1103 (8th Cir. 2013) (cleaned up and citation omitted). Because the record conclusively demonstrates that Ashburn is not entitled to relief under § 2255, an evidentiary hearing is not necessary.

### B. **Strickland** Standard

Ashburn claims that counsel was ineffective in several respects. The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel in criminal prosecutions. U.S. Const. amend. VI; see also Gideon v. Wainwright, 372 U.S. 335, 339 (1963); Johnson v. Zerbst, 304 U.S. 458, 459 (1938); Powell v. Alabama, 287 U.S. 45, 63 (1932). To establish a claim of ineffective assistance of counsel, the petitioner must show both that his counsel's performance was deficient, and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To meet this two-pronged standard, the petitioner must show that "(1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." United States v. Ledezma–Rodriguez, 423 F.3d 830, 836 (8th Cir. 2005). "[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in Strickland." Missouri v. Frye, 566 U.S. 134, 140 (2012) (citing Hill v. Lockhart, 474 U.S. 52, 57 (1985)); see also Allen v. United States, 854 F.3d 428, 432 (8th Cir. 2017).

The first part of the Strickland test requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006) (citation omitted). The petitioner must "overcom[e] the strong presumption that defense counsel's representation fell 'within the wide range of reasonable professional assistance.'" Delgado v. United States, 162 F.3d

981, 982 (8th Cir. 1998) (quoting <u>Strickland</u>, 466 U.S. at 689). Courts are not to "second-guess" trial strategy. <u>Williams</u>, 452 F.3d at 1013. "The Sixth Amendment right to counsel functions to ensure that defendants receive a fair trial, not a perfect one." <u>Willis v. United States</u>, 87 F.3d 1004, 1008 (8th Cir. 1996). "[C]ounsel has a duty to conduct a reasonable investigation or to make a reasonable determination that an investigation is unnecessary," and the Eighth Circuit typically "consider[s] strategic decisions to be virtually unchallengeable unless they are based on deficient investigation." <u>Worthington v. Roper</u>, 631 F.3d 487, 500 (8th Cir. 2011) (citation omitted). A failure to investigate a claim will not succeed if counsel investigated the facts, considered viable theories, and developed evidence to support those theories. <u>Lyons v. Luebbers</u>, 403 F.3d 585, 594 (8th Cir. 2005). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." <u>United States v. Rice</u>, 449 F.3d 887, 897 (8th Cir. 2006) (quoting <u>Strickland</u>, 466 U.S. at 690); <u>see also</u> <u>English v. United States</u>, 998 F.2d 609, 613 (8th Cir. 1993) (holding that counsel's "reasonable trial strategy cannot rise to the level of ineffective assistance of counsel").

Plea negotiations are also "a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 373 (2010). <u>See also</u> <u>Lafler v. Cooper</u>, 566 U.S. 156, 168 (2012) ("If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."). "Effective assistance requires the provision of reasonably informed advice on material issues," and attorneys fail to meet this standard if they are both ignorant on a point of law and fail to perform basic research on that point before offering a defendant advice on whether to plead guilty. <u>Mayfield v. United States</u>, 955 F.3d 707, 711 (8th Cir. 2020). Outside of this failure to provide reasonably informed advice on material issues, "[b]argaining is, by its nature, defined to a

8

substantial degree by personal style," and "[t]he alternative courses and tactics in negotiation are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process." Frye, 566 U.S. at 145.

"The second part of the Strickland test requires that the movant show that he was prejudiced by counsel's error[.]" Williams, 452 F.3d at 1013. This means proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (citation omitted). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Ford v. United States, 917 F.3d 1015, 1021 (8th Cir. 2019) (citation omitted). To demonstrate prejudice when challenging the validity of a guilty plea, "the petitioner must show 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" United States v. Frausto, 754 F.3d 640, 643 (8th Cir. 2014) (quoting Hill, 474 U.S. at 59); see also Hill, 474 U.S. at 59 (prejudice present if discovery of evidence would have changed counsel's recommendation); Lyons, 403 F.3d at 594.

"Because the defendant must satisfy both prongs of the Strickland test to succeed on an ineffective-assistance claim, a court may decide such a claim by addressing either prong." Ford, 917 F.3d at 1021. Ashburn raises twelve grounds for relief styled as ineffective assistance of counsel claims in his memorandum of law in support of his motion, but they each fail to satisfy

the Strickland test. Doc. 2. This Court will address his arguments as presented in his memorandum

of law in support of his § 2255 motion.[3]

### C. Ashburn's Asserted Grounds for Relief

#### 1. Appeal Waiver and Plea Agreement Null and Void

Although not formally listed as an individual ground for relief, Ashburn begins his

memorandum by arguing that his plea agreement, and the appeal waiver contained therein, are null

and void because "the plea of guilty and the signing of the plea agreement was not knowing and

voluntary, but came as the result of three attorneys makeing [sic] Mr. Ashburn sit for 36 (thirty

six) months, stonewalling his every effort to present his case." Doc. 2 at 8 (citing United States v.

Floyd, 931 F.3d 709 (8th Cir. 2019)). The Government responds that "Ashburn provides no

analysis or factual support as to why the passage of time alone meant his plea was not knowing,

intelligent, or voluntary," and that the "claim is baseless." Doc. 31 at 10. Ashburn is not entitled

to collateral relief on this claim because he has failed to establish error or prejudice. See Ford, 917

F.3d at 1021.

During the change of plea hearing and after Ashburn was sworn under oath, Magistrate

Judge Wollmann asked Ashburn, "Are you satisfied with the advice and representation that Mr.

Andrews has given to you?" CR Doc. 136 at 4. Ashburn replied, "So far, yes, ma'am." Id.

Ashburn acknowledged he understood the penalties he faced if he pleaded guilty as well as the

quantity of heroin he had admitted to in the factual basis statement. Id. at 6–7. Ashburn

acknowledged that he was waiving his appeal rights with three exceptions, including his right to

appeal (1) the Court's jurisdiction, (2) a sentence based on an upward departure from his advisory

---

[3] Ashburn organizes his arguments differently in his motion and his memorandum, so this Court
has addressed his arguments as grouped by general topic. See Doc. 1; Doc. 2.

guideline range, and (3) the length of his sentence for a determination of its substantial reasonableness if the Court had departed or varied upward. Id. at 8. Ashburn acknowledged that he was giving up his right to require the Government to prove its case beyond a reasonable doubt at a jury trial. Id. at 8–9. Before Ashburn entered his plea, Magistrate Judge Wollmann asked Ashburn if he needed any more time to visit in private with his lawyer, to which Ashburn responded, "No, ma'am. I'm good." Id. at 11. Ashburn then pleaded guilty to the charge in Count I of the Indictment. Id. at 11–12. Magistrate Judge Wollmann asked, "And are you pleading guilty to this crime because, in fact, you are guilty of it?" Id. at 12. Ashburn replied, "Yes, ma'am." Id.

Ashburn cannot satisfy the first part of the Strickland test because he has not shown that Andrews was ineffective by failing to properly represent him during the plea negotiations. Andrews, who represented Ashburn at the time of his plea, filed an affidavit that he had explained "the issue of drug weight and conspiracy law . . . [to] [Ashburn] and that the evidence supported the amounts alleged." Doc. 20 at 5. Ashburn signed a plea agreement that he had been fully advised of his statutory and constitutional rights and reviewed the agreement with Magistrate Judge Wollmann, who found his plea to be knowing and voluntary. See CR Doc. 92 at 1, 8; CR Doc. 96; CR Doc. 98 at 1 ("Upon questioning the defendant personally in open court, it is the finding of the court that the defendant is fully competent and capable of entering an informed plea, that the defendant is aware of the nature of the charges and the consequences of the plea, and that his plea of guilty to the Indictment is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense."); Walker v. United States, 810 F.3d 568, 580 (8th Cir. 2016) (holding that allegations in a habeas petition "cannot be accepted as true" when "they are contradicted by the record") (citation omitted); Thompson v. United States, 872 F.3d 560, 566 (8th Cir. 2017) (reiterating that a defendant's representations at a change-of-

plea hearing "pose a formidable barrier" to allegations in a habeas petition) (citation omitted). Ashburn has not identified specific material issues about which he was not properly informed before entering his guilty plea. Mayfield, 955 F.3d at 711. He has not shown that Andrews was ignorant on a point of law or failed to perform basic research on that point before offering him advice on whether to plead guilty. Id. Therefore, Ashburn has not "overcom[e] the strong presumption that defense counsel's representation fell 'within the wide range of reasonable professional assistance.'" Delgado, 162 F.3d at 982 (quoting Strickland, 466 U.S. at 689).

Even if the first prong of the Strickland test were satisfied, Ashburn suffered no prejudice from Andrews's advice on whether to accept the plea agreement. Ashburn "offers little more than a 'post hoc assertion' regarding his decision to plead guilty," and his motion "is void of any actions [Ashburn] took or statements he made, before, during, or after sentencing, that would demonstrate a reasonable probability that he would not have pleaded guilty had his lawyer not given the advice that he did." Thompson, 872 F.3d at 567 (citing Lee v. United States, 582 U.S. 357, 367–69 (2017)). Ashburn's failure to show prejudice means he cannot meet the second part of the Strickland test. Williams, 452 F.3d at 1013.

### 2. Refusal to Investigate Discrepancy Between Arrest Warrant and Indictment

Ashburn argues that his counsel was ineffective for failing to request grand jury records to further investigate the discrepancy between the alleged statutory violation charged in the arrest warrant and the one charged in his Indictment, which Ashburn contends was a probable due process violation. Doc. 2 at 9–10, 17 (raising this issue in the introduction to the memorandum and again as Ground 10). The Government concedes the warrant contained a clerical error but responds that Ashburn was fairly on notice of the charges he was indicted on after his initial appearance and suffered no prejudice due to the mistake. Doc. 31 at 27–29. Ashburn is not entitled

to collateral relief on this claim because he has failed to establish counsel's error or prejudice and therefore cannot satisfy the <u>Strickland</u> test. <u>See</u> <u>Ford,</u> 917 F.3d at 1021.

Counsel's alleged failure not to litigate this discrepancy or request the grand jury records were not "errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." <u>Williams,</u> 452 F.3d at 1013 (citation omitted). Wheeler wrote in his affidavit that it was in his "best legal judgment that, to the extent any 'discrepancy' existed between the arrest warrant and the Indictment, filing motions and arguing about the same would have likewise been frivolous." Doc. 21 at 3. Kolbeck's brief representation of Ashburn appears not to have concerned this issue as Kolbeck's affidavit does not address it. <u>See</u> Doc. 22. Ashburn's third attorney, Andrews, wrote that although he does not recall this being an issue in his representation of Ashburn, if the discrepancy did come up, he "would have explained it to him" and he "recall[s] there being no issue here that could have had any impact on Ashburn's case." Doc. 20 at 6.

The Indictment, CR Doc. 1, was valid as it was properly returned by a grand jury, and its validity could not be challenged because of the error in the arrest warrant. <u>Cf.</u> <u>United States v. Rodriguez,</u> 414 F.3d 837, 842 (8th Cir. 2005) ("The small quantum of difference in the amount and description estimated in the warrant—and later corrected in the indictment—did nothing to diminish the illegality of Rodriguez's alleged conduct."). Nor does the error invalidate the underlying arrest warrant. The Federal Rules of Criminal Procedure require the court to issue an arrest warrant for each person named in an indictment which describes the offense charged. <u>See</u> Fed. R. Crim. P. 4(b)(1), 9. Although Ashburn is correct that the statutory violation cited in the warrant has a lower penalty range than the statutory violation he was charged with in the Indictment, Doc. 2 at 3, the Government explains that this discrepancy between the Indictment and

the warrant was a clerical error, Doc. 31 at 28. A clerical error does not invalidate a warrant if the warrant is not obviously deficient. See United States v. Henderson, 471 F.3d 935, 937 (8th Cir. 2006) (per curiam). This arrest warrant was not obviously deficient: the warrant advised Ashburn that he was charged with conspiracy to distribute a controlled substance, albeit of a lesser quantity, and Ashburn had his initial appearance on this Indictment the same day as his arrest, where he was advised of the exact statutory provision he was charged with violating. See CR Doc. 5 at 2 (listing date of arrest as November 6, 2020, and date of initial appearance as November 6, 2020, in the District of Colorado); CR Doc. 1 (Indictment referencing 21 U.S.C. § 841(b)(1)(A)); CR Doc. 28 (warrant referencing 21 U.S.C. § 841(b)(1)(B)).

Ashburn later pleaded guilty to the charge in the Indictment knowing what the penalty was. CR Doc. 92. During the change of plea hearing, Magistrate Judge Wollmann reviewed the precise statutory violations charged in the Indictment as well as the essential elements of the offense that the Government would have to prove at trial, including "that the conspiracy was responsible for distributing 1 kilogram or more of a mixture or substance containing a detectable amount of heroin." CR Doc. 136 at 10–11. Ashburn acknowledged on the record that he understood what it was that he was admitting to and subsequently pleaded guilty to violations of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). Id. at 11.

Courts are not to "second-guess" trial strategy, Williams, 452 F.3d at 1013, and counsel's strategic decisions not to challenge the discrepancy between the Indictment and the warrant fall "within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689. See also Worthington, 631 F.3d at 500 (noting that the Eighth Circuit typically "consider[s] strategic decisions to be virtually unchallengeable unless they are based on deficient investigation" (quoting Link, 469 F.3d at 1203–04)). Ashburn has not "overcom[e] the strong presumption that defense

counsel's representation fell 'within the wide range of reasonable professional assistance.'" Delgado, 162 F.3d at 982 (quoting Strickland, 466 U.S. at 689).

Even if Ashburn could establish error, he has not shown that he has suffered any prejudice from the failure to challenge the arrest or request the grand jury records. Ashburn seems to imply through his filings that he would have been able to plead to a lower statutory violation had the statutory violation in the arrest warrant been substituted for the violation charged in the Indictment, but despite Ashburn's allegation that the "implications here could've made a significant impact on how [his] case proceeded," Doc. 2 at 17, because the Indictment and the arrest were valid, this claim of prejudice is meritless. Further, nothing in the record indicates that the discrepancy between the Indictment and warrant interfered with Ashburn's ability to mount a defense. See United States v. Landers, 417 F.3d 958, 964 (8th Cir. 2005).

### 3. Speedy Trial Issues

Ashburn raises several arguments that revolve around speedy trial issues, including that Wheeler, Kolbeck, and Andrews were constitutionally ineffective for seeking continuances against his will that resulted in a violation of his Sixth Amendment right to a speedy trial and for refusing to file for a fast and speedy trial, and further argues that Kolbeck "coerced/tricked" Ashburn into signing one or two continuances by claiming that they would not ever affect his speedy trial rights. Doc. 2 at 10–12, 17. Ashburn details that due to these continuances, he "was made to sit in detention for thirty six months," and that "prejudice can come through the loss of [witnesses,] loss of memory, spoilation of evidence, length pre-trial detention, detainment, witness tampering on the part of the Government, preventing the defendant several fundamental [benefits] in [providing] a [defense] in [proving] his innocence." Doc. 2 at 10–11.

15

The Government responds that the motions to continue either attached a consent form or "indicated either Ashburn's agreement or a facially legitimate reason justifying the continuance," and a court can find that the ends of justice served by a continuance outweigh the interests in a speedy trial. Doc. 31 at 12–13. The Government notes that Ashburn is serving the mandatory minimum and thus suffered no prejudice from pretrial continuances; after all, he was not released on bond pretrial so that all time he was detained has been credited to his sentence. Id. at 14. Therefore, the Government contends, Ashburn has not shown deficient representation or a prejudicial effect. Id.

Even assuming without deciding that filing the continuances without Ashburn's consent rose to the level of constitutional error, Ashburn is not entitled to collateral relief on any of these claims because he has failed to establish prejudice. See Ford, 917 F.3d at 1021. Ashburn was not subjected to oppressive pretrial incarceration because he was, and still is, serving a 10-year federal sentence for a conspiracy to distribute a controlled substance, the mandatory minimum sentence. Further, the delay did not limit his defense. Ashburn does not at any point detail any specific witnesses whose testimony he would have presented had he gone to trial, how their memory may have been impacted, which evidence was spoiled, or which witnesses the Government allegedly tampered with. See Doc. 2. Ashburn does not argue that he was prevented from challenging the weight of the drugs he was charged with because the quantity of drugs would have "spoiled" or changed during the delays in his case that would have rendered this defense prejudiced for a potential trial. Ashburn has not even attempted to identify any witnesses helpful to his defense, let alone those who became unavailable due to the delay. See, e.g., United States v. Erenas-Luna, 560 F.3d 772, 779 (8th Cir. 2009) ("As to actual prejudice, we agree with the district court that

[petitioner's] vague claims regarding witness memory loss and lost opportunities to cooperate with the government are insufficient, without more, to satisfy his burden.").

Crucially, Ashburn never exercised his right to go to trial and instead pleaded guilty. See CR Doc. 92. Affidavits from his counsel reiterate that Ashburn had no interest in going to trial throughout their various representations of him. See Doc. 20 at 2–3 ("It was clear from the outset of my representation of him that Mr. Ashburn did not want a trial, and I was to try to negotiate a favorable plea deal for him."); Doc. 22 at 1. Ashburn is serving the mandatory minimum for his crime of conviction, which was consistent with the plea agreement. See CR Docs. 92, 128.

In short, Ashburn has not shown that there is a reasonable probability that had he not been delayed, "he would not have pleaded guilty and would have insisted on going to trial.'" Frausto, 754 F.3d 640, 643 (8th Cir. 2014) (quoting Hill, 474 U.S. at 59). Therefore, without deciding whether his attorneys' filing of the continuances "fell 'within the wide range of reasonable professional assistance,'" Delgado, 162 F.3d at 982 (quoting Strickland, 466 U.S. at 689), this Court finds that Ashburn has failed the second prong of the Strickland test because Ashburn failed to show that he was prejudiced by counsel's alleged error. Williams, 452 F.3d at 1013. Without identifying any concrete ways in which the delay impacted his potential proof had he gone to trial, there is not "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.; see also Ford, 917 F.3d at 1021 ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.").

To the extent that Ashburn seeks to raise a speedy trial issue by framing it as an ineffective assistance of counsel claim, see Doc. 2 at 1–2 (discussing allegations that Ashburn's speedy trial rights were not honored), this Court finds it unnecessary to reach the merits of such claimed

17

violation because Ashburn waived this issue when he pleaded guilty without reserving the right to challenge the speedy trial issue and further filed no direct appeal. See Taylor v. United States, 204 F.3d 828, 829 (8th Cir. 2000) (per curiam); see CR Doc. 92 at 1, 7 (reviewing waiver of rights, including waiver of speedy trial and appeal rights, within plea agreement); CR Doc. 136 at 8–9 (acknowledging before Magistrate Judge Wollmann that he understood he was giving up certain appeal rights and his right to a jury trial by pleading guilty).

### 4. Refusal to File for a Bill of Particulars

Ashburn next argues that his counsel was ineffective for failing to file a request for a bill of particulars. Doc. 2 at 12. Ashburn argues that the prosecution's disclosure of "vital, important [elements] of the case" would have assisted the defense in its preparation for trial and assessment of the strength of the Government's case. Id. The Government responds that 1) "the indictment and discovery fairly informed Ashburn of the charge so that he could prepare a defense and assert double jeopardy to bar future prosecutions"; 2) "[t]here is no indication here that a 'reasonable lawyer' would have sought a bill of particulars in this situation"; and 3) "Ashburn has not identified any prejudice as a result of the decision by counsel not to file that motion beyond mere speculation." Doc. 31 at 17–18. Ashburn is not entitled to collateral relief on this claim because he has failed to establish error or prejudice. See Ford, 917 F.3d at 1021.

The Eighth Circuit has emphasized that "[a] bill of particulars . . . is not a proper tool for discovery; it is not to be used to provide detailed disclosure of the government's evidence at trial." United States v. Wessels, 12 F.3d 746, 750 (8th Cir. 1993) (internal citation omitted). Instead, "[w]here the plain language of an indictment fails to alert a defendant of the 'precise nature of the government's allegations,' a bill of particulars can cure deficiencies in the indictment's form." United States v. Mann, 701 F.3d 274, 288 (8th Cir. 2012) (citing United States v. Dolan, 120 F.3d

18

856, 866 (8th Cir. 1997)).  But a court "will not overturn a conviction for want of a bill of particulars unless the defendant suffered actual prejudice due to surprise at trial."  United States v. Beasley, 688 F.3d 523, 532 (8th Cir. 2012).  "[N]umerous courts have held that no bill of particulars is required when the defendant has access to the necessary detail about the charges to prepare a defense, for example, in the form of 'open file' discovery or 'some other satisfactory form.'"  United States v. Johnson, 225 F. Supp. 2d 982, 994 (N.D. Iowa 2002) (collecting cases).

Ashburn cannot satisfy the first part of the Strickland test because he has not shown that any of his attorneys were ineffective by failing to request a bill of particulars.  Wheeler asserts in his affidavit that "[t]here was no basis or need to move for a Bill of Particulars" and he "did not file frivolous motions" that Ashburn requested.  Doc. 21 at 2–3.  Kolbeck's brief representation of Ashburn once again appears not to have concerned this issue as Kolbeck's affidavit does not address it.  See Doc. 22.  Ashburn's third attorney, Andrews, wrote that although he does not recall this being an issue that came up during his representation of Ashburn, if the issue did come up, he "would have explained to him what exactly a Bill of Particulars was, why it would be filed and why it was not justified in his particular case."  Doc. 20 at 3.

Here, the Indictment fairly informed Ashburn of the charges such that he could prepare a defense, thus avoiding surprise at trial, and so he could assert double jeopardy to bar future prosecutions.  The Indictment delineated the statutory elements of the conspiracy to distribute a controlled substance offense and provided specific facts constituting the charged offense, including the approximate dates, location, and the minimum quantity and type of controlled substance charged.  See CR Doc. 1.  Moreover, Wheeler requested discovery two days before Ashburn's initial appearance in the District of South Dakota, see Doc. 21 at 5–11, and discovery was provided for in Judge Viken's Scheduling Order, Doc. 26, shortly following that initial

appearance. Nothing in the record suggests that any requested discovery was withheld from Ashburn's counsel. Under these circumstances, a bill of particulars was unnecessary. See Larson v. United States, 905 F.2d 218, 219 (8th Cir. 1990) (reviewing that "it cannot be ineffective assistance not to raise a meritless argument"); United States v. Henry, No. 216CR20005, 2017 WL 6757581, at *8 (W.D. Ark. Dec. 11, 2017), report and recommendation adopted, 2017 WL 6734007 (W.D. Ark. Dec. 29, 2017) (finding that a bill of particulars was unnecessary and did not constitute ineffective assistance of counsel to merit relief under 28 U.S.C. § 2255). Given that the bill of particulars was unnecessary, Ashburn has not "overcom[e] the strong presumption that defense counsel's representation fell 'within the wide range of reasonable professional assistance.'" Delgado, 162 F.3d at 982 (quoting Strickland, 466 U.S. at 689).

Even if Ashburn could establish error, he has not shown prejudice from the failure to move for a bill of particulars. Ashburn writes that "this motion would have also help disclose how Mr. Ashburn was in violation of 21 U.S.C. §§ 846-841(b)(1)(A) and not 846-841(b)(1)(B)." Doc. 2 at 12 (cleaned up). This unsupported assertion is not enough to show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Frausto, 754 F.3d at 643 (quoting Hill, 474 U.S. at 59). Therefore, Ashburn has not met the second part of the Strickland test by failing to "show that he was prejudiced by counsel's error." Williams, 452 F.3d at 1013.

### 5. Refusal to File a Suppression Motion and Failure to Investigate

Ashburn argues that his attorneys were ineffective for failing to file a suppression motion, hire an investigator to calculate the weights of the drugs that he was charged with in the conspiracy, or request the camera footage from the day of his arrest. Doc. 2 at 12–13, 15–17. Ashburn asserts that his attorneys refused to subpoena the body camera footage or surveillance video footage from

the surrounding area to help Ashburn establish his argument that his Fourth Amendment rights had been violated. Id. at 13, 17. Ashburn further asserts that the evidence in discovery did not support the violation charged, it was obtained illegally, and that his involvement with the conspiracy was shorter than prosecutors alleged. Id.

The Government responds that given the attorneys' representations that there was no basis to file a suppression motion, there is no support for a claim of deficiency, and even if there was, Ashburn has not shown that there is a reasonable probability that such a motion would have been successful. Doc. 31 at 18–19. The Government further asserts that beyond the evidence seized during the search of Ashburn's car, "there was ample other evidence establishing his guilt in the conspiracy." Id. at 27 (listing evidence). Ashburn is not entitled to collateral relief on this claim because he has failed to establish error. See Ford, 917 F.3d at 1021.

Ashburn cannot satisfy the first part of the Strickland test because he has not shown that any of his attorneys were ineffective for failing to investigate or for deciding against filing a motion to suppress. Wheeler wrote that "[b]ased on the discovery," which showed that Ashburn had been arrested after being found passed out behind the wheel of his vehicle while impaired and that he had spoken to law enforcement after being advised of his Miranda rights, "and [his] discussions with" Ashburn, Wheeler "did not believe that any legitimate suppression issues existed." Doc. 21 at 3. Wheeler added, "I am not aware of any grounds that would have supported a motion to suppress the heroin 'weights' that [Ashburn] claims I should have filed if I am reading his petition correctly." Id. Wheeler did not think it was necessary to have an investigator in the case and calculated the heroin weights based on the provided discovery himself. Id. Kolbeck does not appear to have represented Ashburn long enough to fully investigate the case, let alone file a suppression motion. See Doc. 22. Finally, Andrews did hire an investigator, John O'Donoghue,

21

who was a retired DEA Agent. Doc. 20 at 3. O'Donoghue reviewed all of the discovery and personally met with Ashburn at least six different times. Id. at 5. Based on his review of the discovery, Andrews determined that there was not a good faith basis to file a suppression motion, and Andrews explained though that Ashburn struggled to grasp that "he was legally responsible for the total drug weight of all of the participants of a conspiracy regardless of any amounts he personally handled or transported." Id. at 3–4.

Based on the record, these attorneys met their "duty to conduct a reasonable investigation" and their strategic decision not to file a suppression motion is "virtually unchallengeable" as it is not "based on deficient investigation." Roper, 631 F.3d at 500 (quoting Link, 469 F.3d at 1203–04). Ashburn's claim of failure to investigate does not succeed because it is apparent that counsel investigated the facts, considered viable theories, and developed evidence to support those theories. Lyons, 403 F.3d at 594. Because counsel's "reasonable trial strategy cannot rise to the level of ineffective assistance of counsel," English, 998 F.2d at 613, Ashburn has not "overcom[e] the strong presumption that defense counsel's representation fell 'within the wide range of reasonable professional assistance,'" Delgado, 162 F.3d at 982 (quoting Strickland, 466 U.S. at 689).

### 6. Refusal to File a __Brady__ Motion

Ashburn argues that his attorneys were ineffective for failing to request Brady material. Doc. 2 at 14. Wheeler's affidavit establishes that Wheeler requested Brady material from the Government. Doc. 21 at 3, 5–11. Judge Viken's Scheduling and Case Management Order required disclosure of Brady and Giglio materials. CR Doc. 26 at 3. Andrews discussed the Government's Brady obligations with Ashburn, and Andrews did not have reason to believe that a Brady violation had occurred or that he had a good basis to make such a motion based on his review of the

22

discovery. Doc. 20 at 4. Based on the record before this Court, Ashburn has not "overcom[e] the strong presumption that defense counsel's representation fell 'within the wide range of reasonable professional assistance.'" Delgado, 162 F.3d at 982 (quoting Strickland, 466 U.S. at 689). As he has not established error, Ashburn is not entitled to relief on this claim. See Ford, 917 F.3d at 1021.

### 7. Refusal to File a Motion to Sever

Ashburn's co-defendant, Elijah Rhudy, was charged in the same indictment with a gun charge. See CR Doc. 1. Ashburn argues that his counsel was ineffective for failing to file a motion to sever his case from his co-defendant's case. Doc. 2 at 14. Ashburn argues that because his co-defendant faced a firearms-related charge that Ashburn did not also face, "every time Mr. Ashburn went in front of a judge or attended court[,] he was [automatically] falsely accused of being charged with both counts." Id. at 15 (cleaned up). According to Ashburn, this alleged confusion "obviously painted the wrong picture of Mr. Ashburn putting him at a [disadvantage] in several ways." Id. (cleaned up). The Government responds that it is highly unlikely such a motion would have been granted given that the parties were properly joined under Rule 8(b), Ashburn's attorneys were not deficient in their representation by failing to seek severance, and Ashburn has failed to establish prejudice given both he and Rhudy pled guilty. Doc. 31 at 20–22. Ashburn is not entitled to relief on this claim as he has failed to establish prejudice. See Ford, 917 F.3d at 1021.

Ashburn cannot satisfy the second part of the Strickland test because he has not shown that he was prejudiced in any way by the cases not being severed. Under Rule 14, a court may sever co-defendants' trials "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). Wheeler wrote that although Ashburn was concerned that Rhudy's gun crime charge would

prejudice him in front of a jury, Wheeler did not file the requested motion because in his best legal judgment and experience, he did not believe that a motion to sever would be successful. Doc. 21 at 2.

The possible severance of the defendants became moot. Ashburn chose not to go to trial at all. And Rhudy pled guilty more than a year before Ashburn. CR Docs. 49, 71. At the time of his guilty plea, Ashburn was fully capable of exercising his right to a jury trial without the possibility of facing a joint trial with Rhudy, but he knowingly and voluntarily waived that right in favor of pleading guilty. See CR Doc. 92; CR Doc. 136 at 8–9 (waiving his right to require the Government to prove its case beyond a reasonable doubt at trial). Even if Ashburn and Rhudy had gone to trial together, an impossibility after Rhudy was sentenced in July 2022, given the nature of the respective co-defendants' charges, the evidence would have been "easily compartmentalized as to each [defendant] and the likelihood of confusion slight." See Beran v. United States, 580 F.2d 324, 326–27 (8th Cir. 1978) (upholding the denial of § 2255 petitioners' ineffective assistance of counsel claim for failure to request severance of their joint trial as they were properly joined and therefore the failure to request a severance was not ineffective assistance of counsel and no prejudice resulted from the joint trial).

Ashburn was fully capable of proceeding to trial without his co-defendant before his guilty plea and thus has not shown "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Frausto, 754 F.3d at 643 (quoting Hill, 474 U.S. at 59). Therefore, Ashburn has not met the second part of the Strickland test by failing to "show that he was prejudiced by counsel's error." Williams, 452 F.3d at 1013.

### 8.  Refusal to Test Seized Drugs for Purity

Ashburn argues that his counsel was ineffective for failing to move to test the purity of the drugs seized, or to have an independent lab test done on the purity of the drugs. Doc. 2 at 16. He believes that the purity test may have reduced the statutory violation he was charged with from 21 U.S.C. § 841(b)(1)(A) to § 841(b)(1)(B). Id. The Government responds that Ashburn "was charged with a conspiracy to distribute 'a mixture of substance containing a detectable amount of' heroin," and therefore, he was responsible for the whole weight regardless of the purity. Doc. 31 at 25. The Government adds that the Guidelines do not account for heroin purity in determining offense level, unlike other substances. Id. (citing U.S.S.G. § 2D1.1). Ashburn's counsel echoes the irrelevance of the purity levels to Ashburn's defense in their affidavits. See Doc. 21 at 3 ("Additionally, heroin purity was not relevant to any defense issues such as [Ashburn's] involvement in the conspiracy or sentencing."); Doc. 20 at 5 (explaining the irrelevance of purity in determination of the sentence and noting that a higher level of a purity could be cited as an aggravating factor for a higher sentence if testing was ordered).

Counsel's decision not to request purity testing in these circumstances is not error. Rice, 449 F.3d at 897 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). Ashburn has not "overcom[e] the strong presumption that defense counsel's representation fell 'within the wide range of reasonable professional assistance,'" Delgado, 162 F.3d at 982 (quoting Strickland, 466 U.S. at 689). As the results of the purity levels would not have changed the Government's ability to prove a violation of § 841(b)(1)(A) or the guideline ranged faced by Ashburn for that violation, he has not shown "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Frausto, 754 F.3d at 643 (quoting Hill, 474 U.S.

at 59). Therefore, Ashburn has not met the second part of the <u>Strickland</u> test by failing to "show that he was prejudiced by counsel's error." <u>Williams</u>, 452 F.3d at 1013. Because he has not established error or prejudice, Ashburn is not entitled to relief on this claim.

### 9. Conflict of Interest

Finally, Ashburn argues that his counsel was ineffective because they "proceeded to represent Mr. Ashburn despite conflicts of interest." Doc. 2 at 18. Ashburn details his belief about the ways in which public defenders, and his CJA panel counsel, ultimately act in the best interest of the Government rather than their clients due to their financial dependence on Government funds. <u>Id.</u> at 18–19. The Government responds, noting "[i]f being compensated for representation were actually a conflict of interest, only well-to-do defense attorneys acting on a pro bono basis would be able to avoid such a hypothetical conflict." Doc. 31 at 30. Ashburn's counsel categorically denies the presence of such a conflict. <u>See</u> Doc. 21 at 4; Doc. 20 at 7.

Ashburn did not raise this alleged conflict of interest at trial, so he must show an actual conflict to succeed on this claim. "A defendant's claim that he was denied effective assistance of counsel because his attorney labored under a conflict of interest is considered under several different standards." <u>Noe v. United States</u>, 601 F.3d 784, 789 (8th Cir. 2010). In addition to the demonstrations of error and prejudice required under the <u>Strickland</u> test, "[i]f the defendant did not raise the conflict of interest at trial, the defendant must show an actual conflict of interest that affected the adequacy of his representation." <u>Id.</u> Ashburn has failed to do so here.

"A claim which 'is merely a conclusory allegation, unsupported by specifics' is a 'proper subject for summary dismissal.'" <u>Dones-Vargas v. United States</u>, No. 4:20-CV-04124, 2021 WL 5547701, at *10 (D.S.D. Aug. 20, 2021), <u>report and recommendation adopted</u>, No. 4:20-CV-04124, 2021 WL 4551552 (D.S.D. Oct. 5, 2021) (quoting <u>Smith v. United States</u>, 677 F.2d 39, 41

(8th Cir. 1982) (per curiam)).   "[T]he principle of liberal construction will not save [the petitioner's] pleadings if they are based on conclusory or nonspecific factual allegations." Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985). At Ashburn's change of plea hearing, he stated that he was satisfied with the advice and representation that Andrews had provided. CR Doc. 136 at 4. Because Ashburn has failed to show any actual conflict of interest in his pending motion, let alone identify any specific decisions made by his attorneys that meet either prong of the Strickland test, Ashburn is not entitled to relief based on these conclusory allegations. Noe, 601 F.3d at 789; see also Thompson, 872 F.3d at 566 (reiterating that a defendant's representations at a change-of-plea hearing "pose a formidable barrier" to allegations in a habeas petition).

### III.    Certificate of Appealability

When, as here, a district court denies a § 2255 motion, the movant may not appeal without a certificate of appealability.  District courts cannot issue a certificate of appealability unless the movant makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A "substantial showing" means a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also id. (explaining that the question when a district court denies a habeas petition on procedural grounds is whether "jurists of reason would find" the district court's procedural ruling debatable).  This Court declines to issue a certificate of appealability because Ashburn has neither made a substantial showing of the denial of a constitutional right nor shown that the procedural bars present here are debatable.

## IV.    Conclusion

For the reasons explained above, it is hereby

ORDERED that Ashburn's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence, Doc. 1, is denied. It is further

ORDERED that the Government's Motion to Dismiss, Doc. 30, is granted.  It is finally

ORDERED that no certificate of appealability will issue.

DATED this 29th day of January, 2026.

BY THE COURT:


ROBERTO A. LANGE
CHIEF JUDGE